IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


AUDREY I. MCGAHEY                                                    PLAINTIFF

               v.                        Civil No. 11-2036

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                      DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.    Factual and Procedural Background

Plaintiff, Audrey I. McGahey, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

Plaintiff protectively filed her applications on April 4, 2008, alleging a disability onset date of October 15, 2006, due to asthma, Factor V Leiden gene mutation causing thrombophilia, interstitial cystitis, numbness in her fingers and toes, back pain, obesity, depression, anxiety, and dizziness. Tr. 36-58, 146, 166.  On the alleged onset date, Plaintiff was forty years old with a high school education and some college.  Tr. 81, 152.  She has past work as a Nurse's Assistant.  Tr. 31-35, 38-42, 81, 147-148, 195-201.

Plaintiff's applications were denied at the initial and reconsideration levels.  Tr. 84-89, 95-98. At Plaintiff's request, an administrative hearing was held on April 24, 2009.  Tr. 26-67.  Plaintiff was present at this hearing and represented by counsel.  The ALJ rendered an unfavorable decision on August 25, 2009, finding Plaintiff was not disabled within the meaning of the Act.  Tr. 72-83.

-1-

Subsequently, the Appeals Council denied Plaintiff's Request for Review on January 25, 2011, thus making the ALJ's decision the final decision of the Commissioner. Tr. 3-6. Plaintiff now seeks judicial review of that decision.

## II.   Medical History

### A.   Cooper Clinic

Plaintiff has a history of asthma, interstitial cystitis, Factor V Leiden mutation, and depression. Tr. 490-497, 502-590. In 2003, Plaintiff underwent surgical placement of a pubovaginal sling for urinary stress incontinence. Tr. 490, 509-519. The surgery was successful, and Plaintiff recovered well. Tr. 510. In 2004, Plaintiff was diagnosed with uncontrolled asthma and was placed on Advair and Proventil. Tr. 502-508. On January 16, 2006, Plaintiff underwent a cystometrogram ("CMG") and cystoscopy with bladder dilatation. Tr. 493-494, 647-648. Results revealed diffuse erythema of the bladder. Tr. 489. Following drainage, Plaintiff developed profuse glomerulations and gross hematuria. Tr. 489. A panendoscopy demonstrated urethritis. Tr. 489. Darryl R. Francis, II, M.D., a urologist, treated Plaintiff with Elmiron and weekly intravesical therapy. Tr. 487.

At a follow-up appointment on January 27, 2006, Plaintiff complained of urinary frequency and urgency. Tr. 485. Sinclair W. Armstrong, Jr., M.D., prescribed Ditropan XL. Tr. 485. On January 30, 2006, Dr. Francis discontinued intravesical treatment. Tr. 484. On February 3, 2006, Plaintiff stated that her frequency was much better on Ditropan XL. Tr. 483. She was trained in intermittent catheterization in case she developed problems with retention. Tr. 482. On March 22, 2008, Plaintiff stated she varied between having frequency and difficulty voiding. Tr. 481. Dr. Francis instructed Plaintiff to continue taking Elmiron. Tr. 481.

B.  St. Edward Mercy Medical Center

On February 7, 2009, Plaintiff presented to St. Edward Mercy Medical Center with complaints of shortness of breath, dizziness, wheezing, and cough.  Tr. 592-606.  X-rays of Plaintiff's chest revealed no infiltrates or effusions.  Tr. 606.  Plaintiff was assessed with asthma and acute bronchitis.  Tr. 599.

C.  Veterans Administration

Plaintiff received regular treatment at the Veterans Administration ("VA") for the following impairments: arteriolar obstruction, low back pain, chronic interstitial cystitis, asthma, depression, anxiety, insomnia, obesity, and dyslipidemia (low HDL).  Tr. 232-406, 417-476, 671-1461.  On April 6, 2007, Plaintiff was admitted with bluish fingers on her left hand.  Tr. 233-282.  On examination, Plaintiff's left thumb and index finger were bluish and cool to the touch.  Tr. 273.  An arterial Doppler ultrasound of Plaintiff's left upper extremity was normal.  Tr. 234, 276.  A segmental limb pressure test revealed reduced flow to the first and second digits of the left hand.  Tr. 234 272-273. A chest CT angiogram was normal.  Tr. 234, 274-275.  Chest x-rays were within normal limits.  Tr. 400-401.  An echocardiogram was normal except for trace mitral regurgitation.  Tr. 252, 261. Plaintiff was diagnosed with acute arteriolar obstruction, left first and second finger, mild.  Tr. 233. During the course of Plaintiff's hospital stay, her fingers improved.  Tr. 265, 270.  She was treated with Lovenox and discharged in stable condition on April 10, 2007.  Tr. 233, 252-253.

In May 2007, Plaintiff tested positive for Factor V Leiden, a genetic disorder that can increase the chance of developing abnormal blood clots or thrombosis.[1]  Tr. 240.  She was instructed

---

[1] THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 974 (Robert S. Porter, M.D., et al., eds., 19th ed. 2011).

to take aspirin to prevent clotting.  Tr. 240.  In November 2007, Plaintiff stated she was still having difficulty with her asthma despite using a rescue inhaler, nebulizer, and antihistamines.  Tr. 324.  She was prescribed Singulair.  Tr. 324.

In January 2008, Plaintiff complained of fatigue, tingling in her fingers, burning in her throat, cough, and fatigue.  Tr. 320-323.  Plaintiff's pulse oximetry was 99.  Tr. 321.  Her body mass index was 33.3, indicating obesity.  Tr. 454.  Janet Guyer, M.D., counseled Plaintiff on weight loss to improve her fatigue and depression.  Tr. 320.  She also noted that Plaintiff's asthma was considered controlled with medication.  Tr. 382.

On February 21, 2008, Plaintiff complained of pain in her right third and fourth toes that radiated from the top of her foot to her knee and extended to the posterior thigh.  Tr. 310.  On examination, good blood flow was noted with no obvious signs of clotting.  Tr. 310.  Plaintiff's peripheral pulses were intact and capillary refill was less than two seconds.  Tr. 313.  Her right foot was warm and similar in appearance to the left.  Tr. 313.  An arterial sonogram of Plaintiff's right lower extremity revealed some variation in distribution of the right dorsalis pedis, secondary to trauma, with no intraluminal filling defects identified.  Tr. 337.  Plaintiff was treated with Coumadin and aspirin.  Tr. 310, 783.  Plaintiff's other prescriptions included Azithromycin, Chlorpheniramine Maleate, Ferrous Sulfate (iron), Formoterol Fumarate, Gemfibrozil, Hydroxyzine, Loratadine, Mometasone Furoate, Montelukast, Paroxetine, and Pentosan Polysulfate Sodium.  Tr. 311.  In August 2008, Plaintiff was taken off Coumadin due to nosebleeds.  Tr. 869-871.

On June 25, 2008, Plaintiff was treated for a bladder infection.  Tr. 430, 885.  Lisa Lessley, RN, noted that Plaintiff had a history of chronic interstitial cystitis and sometimes had to perform self-catheterization.  Tr. 430, 885.

On September 25, 2008, Plaintiff underwent a laparoscopic cholecystectomy due to recurrent abdominal pain and cholecystitis.  Tr. 717-719, 813-816, 921-922, 946-947.  At a follow-up appointment, Plaintiff stated she was doing "great" since surgery.  Tr. 778.  A CT of Plaintiff's abdomen, dated November 5, 2009, was within normal limits.  Tr. 970.

In November 2008, Plaintiff complained of chest pain and shortness of breath on exertion. Tr. 672-674, 749-770.  On examination, Plaintiff's lungs were clear to auscultation bilaterally.  Tr. 765.  Chest x-rays revealed clear lungs and no acute chest disease.  Tr. 672.  A CT of Plaintiff's thorax showed no evidence of a pulmonary embolus.  Tr. 673.  Abdominal x-rays were within normal limits.  Tr. 675-676.  An echocardiogram revealed mild mitral regurgitation and mild tricuspid regurgitation, but was otherwise normal.  Tr. 702-703, 941-942.  A CT angiogram of Plaintiff's chest was negative.  Tr. 951.  A stress test yielded normal results.  Tr. 705-706, 749-750, 943-944.  A pulmonary function test, dated December 30, 2008, revealed normal spirometry, normal gas transfer, and normal lung volumes.  Tr. 940-941, 953, 1459-1460.

On March 26, 2009, Plaintiff presented to the emergency room with complaints of left shoulder pain with radiation to the axilla and some numbness in her fingers.  Tr. 727-733.  On examination, Plaintiff appeared depressed and in pain.  Tr. 728.  She had discomfort to flexion, extension, lateral flexion, and horizontal rotation to the left side of the neck.  Tr. 728.  She also had pain in the left shoulder and tenderness to palpation of the lateral deltoid and posterior upper shoulder on the left.  Tr. 728.  Plaintiff's fingers were pink with normal capillary refill.  Tr. 728.  An electrocardiogram ("ECG") was normal.  Tr. 728.  Plaintiff was diagnosed with probable impingement syndrome of the left shoulder, possible subacromial bursitis, and possible cervical radiculopathy.  Tr. 728.  She was given a pain injection and treated with Robaxin, Naproxen, and

Hydrocodone. Tr. 729. On April 9, 2009, Plaintiff complained of continuing shoulder pain. Tr. 1393-1394. On examination, Plaintiff exhibited tenderness to palpation at the lateral shoulder area. Tr. 1395. Dr. Guyer diagnosed Plaintiff with bursitis. Tr. 1395.

Plaintiff reported increased anxiety in May 2009. Tr. 1389-1390. As a result, Dr. Guyer increased Plaintiff's dosage of Paxil. Tr. 1390. In September 2009, Plaintiff presented with complaints of nausea and vomiting. Tr. 1050-1051. An esophagogastroduodenoscopy revealed gastroesophageal reflux disease ("GERD"), bile reflux gastritis, and a small hiatal hernia. Tr. 1335-1336, 1366, 1378-1379, 1443-1444. Plaintiff was prescribed Zantac. Tr. 1336.

On October 28, 2009, Dr. Guyer wrote a letter stating that Plaintiff suffered from interstitial cystitis, which causes intermittent pain and urinary tract infections, and Factor 5 Leiden Trait, which has caused arteriolar thrombosis on more than one occasion. Tr. 1337. However, Dr. Guyer noted that she was not comfortable calling Plaintiff "disabled." Tr. 1338.

On December 2, 2009, Plaintiff stated that her interstitial cystitis had improved on Elmiron. Tr. 1034. However, she still had fairly recurrent urinary tract infections. Tr. 1034. As a result, William E. Higginbothom, Jr., M.D., prescribed Macrodantin. Tr. 1035. At a follow-up appointment on March 31, 2010, Plaintiff stated she felt that her bladder was under good control. Tr. 1075.

D. <u>Agency Consultants</u>

In a Physical Residual Functional Capacity ("RFC") Assessment dated May 7, 2008, Lucy Sauer, M.D., determined Plaintiff could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, sit/stand/walk about six hours in an eight-hour workday, and push/pull within those limitations. Tr. 409-416. She found no postural, manipulative, visual, communicative, or

environmental limitations.  Tr. 411-413.

E.  Jennifer Burks, M.D.

On November 11, 2010, Jennifer Burks, M.D., completed a Medical Source Statement, in which she determined Plaintiff could frequently lift/carry ten pounds, occasionally lift/carry less than ten pounds, stand and/or walk for a total of two hours in an eight-hour workday, and sit for a total of two hours in an eight-hour workday, but must alternate sitting and standing every two hours due to her clotting disorder.  Tr. 1465-1467.  She further noted that Plaintiff was limited in the use of her upper extremities and would need five or more bathroom breaks per workday due to interstitial cystitis.  Tr. 1465.  Dr. Burks found that Plaintiff could climb, balance, squat, kneel, crouch, and bend for less than two hours in an eight-hour period, reach, handle, finger, and grip for six hours in an eight-hour period, and feel for less than two hours in an eight-hour period due to numbness and tingling in her hands and feet.  Tr. 1466.  Environmentally, Dr. Burks found that Plaintiff must avoid all exposure to extreme cold, fumes, odors, dusts, gases, and poor ventilation, and must avoid concentrated exposure to extreme heat, wetness, humidity, noise, vibration, and hazards (machinery or heights).  Tr. 1467.  Based on the totality of Plaintiff's symptoms, Dr. Burks determined Plaintiff could work a total of two hours in an eight-hour workday.  Tr. 1466.

III.  **Applicable Law**

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003).  "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion."  *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)).  In determining whether

evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

IV.   **ALJ's Determination**

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since October 15, 2006, the alleged onset date.  Tr. 77.  At step two, the ALJ found Plaintiff suffered from obesity, asthma, anxiety, depression, peripheral vascular disease, ischemic necrosis of the digits, and chronic interstitial cystitis, all of which were considered severe impairments under the Act.  Tr. 77.  At step three, she determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Tr. 77-78.

At step four, the ALJ found Plaintiff had the RFC to perform light work, except with the following limitations: sit and/or stand continuously for one hour at a time, no sustained driving; must have access to a bathroom facility; no climbing scaffolds, ladders, or ropes; avoid concentrated dust, fumes, smoke, chemicals, and noxious gases; avoid unprotected heights and dangerous equipment; occasionally climb ramps, stairs, stoop, bend, crouch, crawl, kneel, and balance, secondary to fatigue as a side effect of her prescriptions.  Tr. 78-81.  Mentally, the ALJ determined Plaintiff could perform work that: includes non-complex, simple instructions and little judgment; is routine and repetitive and learned by rote with few variables; includes superficial contact incidental to work with the public and coworkers; and includes concrete, direct, and specific supervision.  Tr. 78-81.

With these limitations, the ALJ found Plaintiff could not perform her past relevant work.  Tr. 81.  However, after receiving vocational expert testimony, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[2]  Accordingly, the ALJ determined

---

[2] The ALJ determined Plaintiff could perform the requirements of representative occupations such as hand packager, of which there are 2100 jobs regionally and 200,000 jobs nationally, mail clerk, of which there are 500 jobs regionally and 79,000 jobs nationally, and plastics worker, of which there are 1300 jobs regionally and 81,000 jobs nationally.  Tr. 60-67, 82.

Plaintiff was not under a disability from October 16, 2006, the alleged onset date, through August 25, 2009, the date of the decision.  Tr. 82.

**V.**   **Discussion**

On appeal, Plaintiff contends the ALJ erred by: (A) dismissing her subjective complaints; (B) improperly determining her RFC; and (C) failing to fully and fairly develop the record.  *See* Pl.'s Br. 8-15.  For the following reasons, the court finds that substantial evidence does not support the ALJ's decision.

Plaintiff submitted Dr. Burks' Medical Source Statement to the Appeals Council after the ALJ rendered her decision.  Under the regulations, "if a claimant files additional medical evidence with a request for review prior to the date of the [Commissioner's] final decision, the Appeals Council MUST consider the additional evidence if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision."  *Williams v. Sullivan,* 905 F.2d 214, 216 (8th Cir. 1990) (emphasis in original).  Once it is clear that the Appeals Council has considered newly submitted evidence, the court does not evaluate the Appeals Council's decision to deny review.  *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994).  Instead, the court's role is limited to deciding whether the ALJ's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made.  *Id.*  Of necessity, that means the court must speculate to some extent on how the ALJ would have weighed the newly submitted reports if they had been available for the original hearing.  *Id.*

The court cannot conclude that substantial evidence supports the ALJ's decision.  Although it does not appear from the record that Dr. Burks was a treating physician, she was the *only* examining physician to render an opinion on Plaintiff's work-related limitations.  The only other

RFC assessment was completed by Dr. Sauer, a non-treating, non-examining agency physician. *See Dixon v. Barnhart*, 324 F.3d 997, 1002 (8th Cir. 2003) (relying upon non-examining, non-treating physicians to form an opinion on a claimant's RFC does not satisfy the ALJ's duty to fully and fairly develop the record). Dr. Sauer's RFC assessment was completed in May 2008, which was well over a year before the ALJ rendered her August 25, 2009 decision. Tr. 409-416. Furthermore, no treating physician assessed Plaintiff's work-related limitations, and the ALJ did not order a consultative evaluation. *See Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001) (reversible error for ALJ not to order consultative examination where such evaluation is necessary to make informed decision). For these reasons, the undersigned recommends that this case be remanded for further development of the record concerning Plaintiff's physical impairments and how they affect her ability to perform substantial gainful activity.

On remand, the ALJ should attempt to obtain an RFC assessment from a treating physician. If this is not possible, the ALJ should send Plaintiff for a consultative examination to determine the full extent of her physical limitations, particularly as it relates to her interstitial cystitis, numbness in her hands and feet, and clotting disorder.

## VI.    Conclusion

Based on the foregoing, the undersigned recommends reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).  **The parties have <u>fourteen</u> days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 10th day of April 2011.


/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE